[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The instant proceeding is a limited contested dissolution of a certain marriage between Elena B. and Herbert J. Becher which occurred on May 1, 1965 at Yonkers, New York. The plaintiff has resided continuously in this jurisdiction at least twelve (12) months next before the filing of the complaint. Two children were born to this union: Courtney and Jason, each of whom has attained her and his respective majority. No other minor children were born to the plaintiff since the date of the marriage. No federal, state or municipal agency, public or private, is contributing to the support of either party. The court finds that the marriage has broken down irretrievably, and the decree made on the grounds of irretrievable breakdown.
The plaintiff is fifty-one (51) years old and enjoys good health with the exception of an asthmatic condition. The defendant is fifty-six (56) years old and his health was CT Page 11175 characterized as fine. It appears as though the parties enjoyed a reasonably happy marriage until the children left home after having finished school.
The plaintiff, however, appears to challenge that finding and asserts that the defendant drank heavily over the years and raged and screamed on every holiday and on every "occasion." It is her position that she constantly requested that he seek counseling, that they seek joint counselling, and that she in fact became a member of Al-Anon. Thereafter, she entered into counseling with two different therapists. Her requests to join her in counseling, she recites, were never acceptable to the defendant. It is her contention that the proverbial "straw" occurred on New Year's Eve, 1991, when after having dined with friends in a home in Sherman, the defendant became violent in the vehicle which she was driving on the way home. It is her contention that he beat his fists on the dashboard and in fact broke and/or dented the door to the glove compartment. This she claims was very frightening.
The plaintiff has held many part-time jobs during the course of the marriage and her long list includes a period of employment at Boehringer Ingelheim. This was her longest held position, during which time she asserted that she paid her daughter's tuition at Fordham University out of her earnings thereafter drawing out a minimum amount per week siphoned for herself. After leaving the family home, she decided to attend the Culinary Institute of America. She graduated with a degree in August of 1994 which is called an AOS degree, an Associate of Occupational Studies. The curriculum covered some twenty-one (21) months. Thereafter, she decided to enter a new program offered for the first time which will conclude in December of 1995, and upon successful completion she will be awarded a Bachelor of Professional Studies degree. She has paid her own tuition and board with college loans and with gifts received annually at Christmas from her father. Her best estimate of the amount that she owes on the student loans is twenty-five thousand ($25,000) dollars. It is her anticipation and her testimony that upon graduation from the Culinary Institute of America, she can expect to earn no more than six ($6) or seven ($7) dollars per hour as an entry level person pursuing the fruits of her education.
The defendant is an automation engineer employed by the Risdon Corporation. His base salary as of this date is fifty-eight thousand three hundred fifty-one ($58,351) dollars per CT Page 11176 year. At approximately the time that their children were preparing for college, the parties caused an addition to be constructed and erected on their home. The purpose of this construction was two-fold: (1) to add another bedroom, and (2) to create a machine shop where Mr. Becher might "moonlight" to supplement the family income. He pursued this venture for several years and realized little or no substantial economic benefit from it. With the downturn in the economy in the late 80's and early 90's, no more large companies offered him contracts and he terminated his business.
He denies drinking to excess and alleges that when the plaintiff was not at home, she would be gone for hours at a time and there would never be an explanation as to where she had been or with whom. He recounts his impression of her therapy sessions in Norwalk wherein the participants, from the description offered to him, returned to their childhood dressed as children and literally climbed into cribs. (Regression therapy?) The fair import of his testimony was that she no longer wished to be married, that she simply walked away from the marriage, and that she cared nothing about him in any sense of the word. If there is fault in this marriage, the court is satisfied that it should be equally apportioned.
The testimony of each is utterly contradictory. However, one witness was called by the defense who with his wife had been a mutual friend of the parties and had socialized with them in their respective homes and at other locations over the years. He advised the court that the plaintiff had changed substantially over the last four years, that she was extremely nervous and very erratic. It is his impression that she is responsible for the breakdown of the marriage and that the defendant wished to maintain the former happy relationship that they enjoyed. One glaring paradox in her version of the marital difficulty was her emphasis upon the defendant's refusal to consider attending counseling sessions. However, for three or four years, not long before the final separation, these two people were extremely active in the Marriage Encounter movement. This is hardly consistent with a troubled marriage and with people in the throws an erratic and rapidly disintegrating marital union.
Among the assets listed by the plaintiff are a 1983 Mercedes automobile with a claimed value of something between four thousand and five thousand ($4,000 and $5,000) dollars; an undivided one-half interest in forty-eight (48) United States CT Page 11177 Savings Bonds, valued at four thousand eight hundred ($4,800) dollars; an Individual Retirement Account in the amount of ten thousand one hundred twenty-four dollars and twenty-seven ($10,124.27) cents; and a certificate of deposit in the amount of three thousand ($3,000) dollars. The most significant asset appears to be the marital residence the parties value at two hundred five thousand ($205,000) dollars and two hundred ten thousand ($210,000) dollars respectively. That home is encumbered by a mortgage in the amount of one thousand fourteen dollars and four ($1,014.04) cents. The equity in that property mathematically exceeds two hundred thousand ($200,000) dollars. It should be noted that the savings bonds were equally divided between the parties to their mutual satisfaction prior to trial. No order with respect to those bonds is therefore necessary or appropriate.
The defendant's assets include his interest in the marital domicile as well as his interest in four motor vehicles. He too claims the Mercedes as well as a 1986 BMW 325 valued at four thousand eight hundred ($4,800) dollars; a 1970 MG Midget valued at three thousand eight hundred ($3,800) dollars and a 1969 Triumph valued at three thousand ($3,000) dollars. His pension reposes in two Risdon Corporation pension plans, the first of which is a 401 K and the second is the Risdon Corporation Salary Retirement Plan. The 401 K is valued at one hundred eighteen thousand nine hundred four dollars and seventy-one ($118,904.71) cents. The noncontributory plan is somewhat difficult to evaluate as the result of the corporation's policy of not providing annual printouts and what appears to be a practice expressing somewhat vague numbers with respect to employee's actual interest from time to time. It seems that its "worth" is bandied about to be approximately one hundred fifteen thousand ($115,000) dollars. In this instance, with the orders being issued, a finding is neither necessary nor desirable. He too has an individual retirement account in the amount of fifteen thousand six hundred fifty-four dollars and fifty-two ($15,654.52) cents, and three miscellaneous assets which the court will call the cash value of his life insurance policy, certain furnishings, certain tools all of which aggregate something slightly in excess of ten thousand ($10,000) dollars.
While the plaintiff has attained her degree from the Culinary Institute of America which has a substantial value in and of itself, she has decided to continue and obtain her Bachelor Profession Studies from the Institute. This court cannot fault CT Page 11178 that decision as it seems reasonable and logical as additional education would certainly seem to make her more attractive in the job market and make whatever employment she pursues and in which she may engage more lucrative. In order to do that, and in view of the length of the marriage, this court will award her periodic alimony. The defendant is ordered to pay to the plaintiff as and for periodic alimony the sum of three hundred ($300) dollars per week until July 1, 1997 at which time the defendant's obligation to pay alimony shall be completely fulfilled and shall cease and terminate. Each of the parties is awarded two of the motor vehicles. The Mercedes and the Triumph are awarded to the plaintiff and the BMW 325 and the MG Midget are awarded to the defendant. Each of the parties is ordered to execute and deliver to the other any documentation which may be necessary or appropriate to effectuate this order. The plaintiff is ordered to convey all of her right, title and interest in and to the marital domicile located at 12 New Light Drive in Danbury to the defendant, together with and subject to all the appurtenances with and encumbrances against the title. The defendant is ordered to immediately list the property for sale on a non-exclusive listing with a respectable real estate broker. Any so-called fixing up expenses, repairs, improvements or other expenses necessary to effectuate a sale of the property shall be paid for by the defendant who shall be reimbursed therefor from the gross proceeds of the sale. The net proceeds of the sale being defined as those available for distribution to the parties after payment of any real estate commission, mortgages, the expenses addressed in the preceding sentence shall be equally divided between the parties. Any additional third party encumbrances occurring after the date of this decision shall be the responsibility of the party against whom such encumbrance is filed, and that party shall indemnify and hold the other harmless from all such claims.
The defendant is ordered to execute a qualified domestic relations order or orders in form and substance acceptable to the Risdon Corporation creating a 50 percent interest in the plaintiff in and to the proceeds of each of his two pension programs. The plaintiff is awarded no interest whatsoever in the proceeds of an anticipated inheritance apparently vested in the defendant from the estate of a deceased German relative. Each of the parties is awarded their individual retirement account, certificates of deposit, cash credit on life insurance policies, furnishings, tools, as applicable, and as set forth in their financial affidavits. The defendant is ordered to maintain an insurance policy or policies in the amount of forty thousand CT Page 11179 ($40,000) dollars so long as he is obligated to pay alimony. This obligation shall, ipso facto, terminate upon the satisfaction of that alimony order.
In entering the order of alimony and the orders distributing and settling the parties' property rights, the court has considered the applicable statutes the criteria set forth therein, the cases which speak to those statutes and those criteria, as well as the credibility of the witnesses who testified before it.
Judgment may enter accordance with the foregoing.
Moraghan, J.